# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **ZEN-NOH GRAIN CORPORATION** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **C.A. No. 1:24-cv-00381-MRD-PAS** |
| ) | **Rule 9(h) Admiralty Claim** |
| **SADOT LATAM LLC** ) | |
| ) | |
| **Defendant.** ) | |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO OSR'S MOTION
## TO INTERVENE AND VACATE ATTACHMENT

### PRELIMINARY STATEMENT

Plaintiff, ZEN-NOH GRAIN CORPORATION ("**Zen-Noh**"), through undersigned counsel, FLOYD ZADKOVICH (US) LLP and ECKLAND & BLANDO LLP, respectfully submits to this Memorandum of Law in Opposition to Intervenor OSR ROTTERDAM BV's ("**OSR**") *Motion to Intervene and Vacate Zen-Noh's Attachment* ("**Motion to Vacate**") (Dkt. 20).

This Court should deny the Motion to Vacate on the threshold ground that OSR lacks standing to intervene under both the Federal Rules of Civil Procedure ("**F.R.C.P.**") and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("**Supplemental Rules**"). In any event, the Motion to Vacate independently fails because Zen-Noh's attachment complies with all applicable requirements. Further, OSR's argument that Zen-Noh's attachment is purportedly predicated on a non-maritime sales contract misses the point. Zen-Noh's attachment was sought, and granted, on the basis of maritime **tort** claims (fraud, conversion, and maritime interference with contract) against the Defendant. These tort claims are properly within admiralty jurisdiction and support Zen-Noh's maritime attachment. All cases OSR cites in support involved courts vacating attachments on the ground that

1

plaintiffs sought attachment based on non-maritime sales contracts. Such cases are inapposite here, and this Court should therefore dismiss the Motion to Vacate.

**FACTS**

The relevant facts are fully set forth in the pleadings and papers already filed in this action (Dkts. 1 and 4).

In short, Zen-Noh fully performed its obligations as purchaser and then seller of the cargo and remained the sole holder of the original ocean bills of lading in respect of the cargo. By contrast, the Defendant Sadot wrongfully and falsely held itself out as the owner of the cargo and lawful holder of the bills of lading, and issued orders to the vessel's owners and charterers to withhold delivery. Following these acts, the vessel was diverted away from its intended discharge port in Lebanon and into Syrian waters, placing Zen-Noh's property beyond reach.

The Defendant's actions constitute maritime fraud, maritime conversion, and maritime tortious interference with Zen-Noh's contract, which all occurred on navigable waters. The Defendant cannot be found in the District. However, Zen-Noh attached the Defendant's bank account in this District as relief for these maritime torts committed by the Defendant.

**ARGUMENT**

**POINT I**

**OSR'S MOTION TO VACATE SHOULD BE DENIED BECAUSE OSR LACKS STANDING TO INTERVENE & MOVE TO VACATE**

OSR's Motion to Vacate should be denied because it has not established that it has standing to intervene in Zen-Noh's proceedings against the Defendant.

*(i)     OSR Lacks Standing Under F.R.C.P. Rule 24 to Intervene*

*a.   Intervention As of Right Under F.R.C.P. Rule 24(a)(2)*

OSR argues that because (1) OSR and Zen-Noh have both commenced actions against the Defendant, (2) both OSR and Zen-Noh have attached the Defendant's funds at Citizen

2

Bank, and (3) the funds are insufficient to satisfy both claims, then OSR has standing to intervene to "protect its interest" in the funds, so that "its interests" would not be impaired or impeded, pursuant to F.R.C.P. Rule 24(a)(2). *See* Motion to Vacate at 3.

These circumstances do not satisfy the requirements for intervention as of right under F.R.C.P. Rule 24(a)(2). First, OSR fails to show that it has a "significantly protectable interest" relating to the property or transaction that is subject of the action. *See Kleissler v. United States Forest Service*, 157 F.3d 964, 980 (3d Cir. 1998), citing *Donaldson v. United States,* 91 S. Ct. 534 (1971). OSR and Zen-Noh brought independent actions against the Defendant. Zen-Noh's action seeks relief for three maritime tort claims against the Defendant. *See Verified Complaint in Admiralty* (Dkt. 1) ("**Complaint**") ¶¶67-102. OSR brought a claim for an alleged breaches of a charterparty and a subsequent "washout agreement". *See Verified Intervenor Complaint* (Dkt. 19) ("**Intervenor Complaint**") at ¶¶14, 26-29. OSR fails to show it has a "significantly protectable interest" in the subject of the three maritime tort claims comprising Zen-Noh's action.

Neither does OSR's purported "interest" in the attached funds provide a basis to intervene. Courts have rejected intervention when the intervenor's asserted interest is the eventual availability of funds to collect on a judgment, rather than a right inherent in the actual subject matter of the suit. *See Hawaii–Pacific Venture Capital Corp. v. H.B. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977) (stating "to trigger a right to intervene, however, an economic interest must be concrete and related to the underlying subject matter of the action"); *United States v. Alisal Water Corp*., 370 F.3d 915, 920 (9th Cir. 2004) (stating "an allegedly impaired ability to collect judgments arising from past claims does not, on its own, support a right to intervention. To hold otherwise would create an open invitation for virtually any creditor of a defendant to intervene in a lawsuit where damages might be awarded"); *Public Serv. Comp. of New Hampshire v. Patch,* 136 F.3d 197, 205 (1st Cir.1998) (holding that "[i]t is settled beyond

peradventure...that an undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right").

OSR's attachment does not grant OSR an interest in the outcome of Zen-Noh's action involving the attached property. Because Zen-Noh's action does not seek to determine the validity, priority, or extent of OSR's attachment, OSR's claimed interest falls outside F.R.C.P. Rule 24(a)(2) and therefore intervention should be denied.

Furthermore, even if OSR had a sufficient interest, this action does not "impair or impede" OSR's ability to protect its interest "as a practical matter". F.R.C.P. Rule 24(a)(2). OSR's attachment exists solely by virtue of its own case against the Defendant, not because of Zen-Noh's action.

In addition, the possibility that Defendant's assets may be insufficient is not an "impairment" under F.R.C.P. Rule 24(a)(2): the insufficiency of assets is a practical risk faced by all creditors, and it does not transform one creditor's desire for priority payment into a legally protectable interest in another creditor's case. *See Glyn v. Roy Al Boat Mgmt. Corp.,* 897 F. Supp. 451, 453 (D. Haw.1995) (stating "were this court to agree that [the intervenor] could intervene ... it would transform every civil suit before this court into a kind of exaggerated interpleader action where all potential creditors of all parties could assert their rights"). Accordingly, OSR's motion to intervene under F.R.C.P. Rule 24(a) should be denied.

### b. *Permissive Intervention Under F.R.C.P. Rule 24(b)*

OSR's alternative basis for seeking permissive intervention under pursuant to F.R.C.P. Rule 24(b) should also be rejected. OSR states that its claim shares a common question of law or fact with Zen-Noh's claim. Motion to Vacate at 3, fn 1. Those alleged common questions are (1) "whether the maritime attachment is proper"; and (2) "Sadot's funds at Citizens Bank". *Id.* It has been held in the First Circuit that "if the requirements of Rule 24(a)(2) are not met, '[o]n timely motion, the court may permit anyone to intervene who ... has a claim or defense that

shares with the main action a common question of law or fact'". *Victim Rights Law Center v. Rosenfelt*, 988 F.3d 556, 561 (1st Cir. 2021). The District Court "enjoys a very broad discretion in granting or denying the motion". *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 116 (1st Cir. 1999).

A Rule B attachment is a provisional remedy that entitles a plaintiff to obtain *quasi in rem* jurisdiction against the defendant. Whether or not *Zen-Noh's* attachment of Sadot's funds is proper does not, and cannot form, part of *OSR's* claims for attachment against Sadot. These are separate and independent attachments. The fact that OSR came late, and the funds in Sadot's account are insufficient for enforcement, does not mean that Zen-Noh's and OSR's substantive claims for relief somehow begin to share a common question of fact or law.

Further, the validity of Zen-Noh's attachment is not a question of law or fact that is disputed by anyone in the Zen-Noh proceedings. This Court validly granted the attachment on September 26, 2024, to Zen-Noh. Sadot has not filed a motion to vacate since then. In turn, OSR has no standing to move to vacate Zen-Noh's attachment in the first place. *Infra,* 6-9.

Further, OSR has not articulated how "Sadot's funds at Citizens Bank" is a *question* of fact necessitating intervention. The existence of Sadot's funds in that bank is not a factual matter in dispute and poses no "question" requiring court determination in Zen-Noh's action.

### *(ii)    OSR Lacks Standing Under Supplemental Rule E(4)(f) to Move to Vacate*

OSR is wrong to assert that it has standing to seek vacatur under Rule E(4)(f) of the Supplemental Rules ("**Rule E(4)(f)**"). That provision grants a prompt post-seizure hearing to "any person claiming an interest" in property attached pursuant to Rule B of the Supplemental Rules ("**Rule B**"), at which the plaintiff must show why the attachment should not be vacated

or other relief granted. Rule E(4)(f) was designed to allow persons on the *defendant's* side to challenge the validity of attachment.

However, a competing attaching *plaintiff* such as OSR does not possess an "interest" in the attached property sufficient to trigger an entitlement to a post-seizure hearing under Rule E(4)(f). The mere fact that OSR purports to act as a competing creditor that has attached the same property does not bring OSR within the category of persons entitled to such a hearing.

Firstly, OSR has not obtained an "interest" in the property attached for Rule E(4)(f) purposes. Rule B serves two narrow aims: (1) to establish *quasi in rem* jurisdiction over an absent defendant via his property and to secure his appearance in court to answer the creditor's claims, and (2) to give the attaching plaintiff security to satisfy any judgment he might obtain in the action. *See STX Panocean (UK) Co., Ltd. v. Glory Wealth Shipping Pte Ltd*., 560 F.3d 127, 130 (2d Cir. 2009). Accordingly, each attaching creditor attaches the res *to obtain quasi in rem jurisdiction over the defendant* when the defendant is not "found within the district". *See Navieros Inter-Americanos, S.A. v. M/V Vasilia Exp*., 120 F.3d 304, 314 (1st Cir. 1997) (stating "Rule B allows the attachment of a vessel or other tangible property under certain circumstances to gain *quasi in rem* jurisdiction over a defendant"). A Rule B attachment does not create any rights for other creditors who might prefer that another's attachment be dissolved.

Second, the cases in which courts have allowed third parties to seek vacatur under Rule E(4)(f) confirm the limits of the rule and underscore why OSR (a second and late plaintiff) lacks standing.  While the party seeking a post-seizure hearing is usually the defendant, Courts have previously entertained post-seizure hearings initiated by non-defendant parties in limited circumstances where those parties assert ownership interests, possessory interests, or (in the

context of Rule C arrests) maritime liens in the attached property. OSR identifies no case holding that a separate attaching creditor under Rule B qualifies as such a person.

In *Nanyuan Shipping Co. v. Marimed Agencies UK*, 595 F. Supp. 2d 314 (S.D.N.Y. 2009), the Court permitted a non-defendant intervenor to challenge an attachment only because the intervenor *owned* the property: a clear "interest" within the meaning of Rule E(4)(f) (stating that "the Court is further persuaded that [the intervenor] Liana Ltd. sufficiently claims an interest in the attached property. Liana Ltd. provided to the Court a statement under penalty of perjury that the attached funds belong to Liana Ltd"). *Nanyuan Shipping Co.*, 595 F. Supp. 2d 314, 317.

Likewise, in *Evridiki Navigation, Inc. v. Sanko S.S. Co., Ltd.*, 880 F.Supp.2d 666 (D. Md. 2012), the intervenor was a party that had held a maritime lien in the vessel and arrested that vessel under Rule C, while the vessel had been subject to competing attachments (stating "[the intervenor] claimed that [the defendant's] breach of charterparty entitled it to a maritime lien against the [vessel] and therefore moved that the Court issue a warrant for the arrest of the [vessel] *in rem*...About a week later, [the intervenor] filed the...Emergency Motion to Vacate Attachment"). *Evridiki Navigation* at *669. A creditor who arrests a ship under Rule C of the Supplemental Rules (unlike in a Rule B attachment) must, as a prerequisite to any interest, hold a maritime lien against the ship itself and the maritime lien amounts to a true *in rem* interest in that ship. By contrast, OSR has no ownership interest and no maritime lien in Sadot's funds in the Citizens bank account. Accordingly, OSR is not a person claiming an "interest" in these funds under Rule E(4)(f).

This interpretation is fully consistent with the policy rationale of Rule E(4)(f). The post-seizure hearing exists primarily to safeguard the *defendant's* due-process rights following a seizure made without prior notice, not to provide a mechanism for ordinary competing *creditors* to rearrange litigation priorities. Courts have emphasized this rationale for the rule. In *Sonito*

*Shipping Co., Ltd. v. Sun United Maritime Ltd*., 478 F.Supp.2d 532 (S.D.N.Y.2007), the Court stated Rule E(4)(f) "is designed to satisfy the constitutional requirement of due process by guaranteeing to the defendant a prompt post-seizure hearing at which he can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings". *Sonito*, 7, 478 F.Supp.2d 532 at 536, citing *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 272 (2d Cir.2002) (overruled on other grounds by *Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009)).

 In *Trans-Asiatic Oil Ltd. S.A. v. Apex Oil Co., C.A.1 (Puerto Rico) 1984*, 743 F.2d 956 (1st Cir. 1984), the First Circuit reaffirmed that the "basic protection required for the debtor is the assurance of a prompt post-garnishment hearing before a judge...Such a hearing is an effective means for an admiralty defendant to dissolve a wrongful attachment."  743 F.2d 956 at *962 (citations omitted). The rule's constitutional purpose is thus directed at protecting the debtor *defendant*, not empowering rival *plaintiffs*.

This distinction is further reflected in the differences between Rule B and Rule C of the Supplemental Rules. A Rule C arrest followed by a judicial sale of the arrested property extinguishes maritime liens of all lienholders in that property, creating a due-process relevant interest for those lienholders (as their property rights are directly at stake). But a Rule B attachment does not extinguish *in rem* liens. Neither does a Rule B attachment extinguish personal claims of other creditors (like OSR). Such personal claims continue to exist despite attachment, so competing creditors in OSR's position can continue to assert them elsewhere. Notably, the claims asserted in a Rule B attachment action are not *claims against the restrained property* as they are in the Rule C arrest context. Instead, the claims are against the individual or entity defendant, not against a personified *res*.

As a result, a competing attaching creditor under Rule B (such as OSR) has no "interest" within the meaning of Rule E(4)(f). Its position is categorically unlike that of the intervenors

with actual property interests in *Nanyuan Shipping* or *Evridiki Navigation*. OSR suffers no deprivation and therefore has no due process footing to demand a post-attachment hearing. Accordingly, it lacks standing under Rule E(4)(f) to intervene and so its Motion to Vacate should be denied.

### (iii)    OSR's Intervention Would be Futile

In the alternative, should OSR be found to have standing under Rule E(4)(f), its intervention should be denied anyway because it is futile. In *A. Coker & Co. v. Nat'l Shipping Agency Corp*., No. 99-CV-1440, 1999 WL 1009808 (E.D. La. Nov. 5, 1999), the District Court denied a motion brought by a second in time competing attaching creditor to intervene in and challenge the attachment proceedings between a first in time attaching creditor and the defendant. The Court held that where multiple claims are brought solely under Rule B, the first-in-time rule applies to determine priority, such that later creditors cannot displace an earlier attachment. As a result, because the property attached was insufficient to cover both claims, the Court denied the competing, attaching creditor's intervention as futile (stating "because it is undisputed that Coker attached NSAC's assets before Bisso, and the funds attached are insufficient to cover even Coker's claim, the Court concludes that any intervention by Bisso in this action would be futile"). *A. Coker & Co.,* No. 99-CV-1440 at *3. Accordingly, in a case that involves "pure Rule B attachment", the first-in-time rule applies such that OSR's motion for leave to intervene in this matter would be futile. Moreover, OSR has not proved that its own attachment is supported by a maritime claim yielding admiralty jurisdiction. OSR's purports that its attachment is based on "valid maritime claims against Sadot—*i.e.* breaches of a charterparty." *See* Dkt. 19, Intervenor Complaint at ¶33. However, its claims are for Sadot's alleged (1) breach of charterparty duties, and (2) breach of agreement to pay OSR $250,000 to cancel the charterparty. This second claim is based on an allegation of fact that following Sadot's alleged charterparty breaches, "Sadot agreed to pay OSR $250,000.00 "as a washout

to cancel" the charter party". *Id.* at ¶14. This "washout agreement" was then allegedly breached by Sadot.

The "washout agreement" was not disclosed and its effect appears to be that it essentially terminates the charterparty and replaces it with washout obligations: a form of settlement agreement in lieu of the charterparty obligations. A settlement agreement without a maritime element does not support maritime contract jurisdiction for purposes of Rule B. *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23-24 (2004) (stating "the answer [as to whether admiralty contract jurisdiction is invoked] 'depends upon ... the nature and character of the contract,' and the true criterion is whether it has 'reference to maritime service or maritime transactions'"); *Chi Shun Hua Steel Co. v. Crest Tankers, Inc.*, 708 F. Supp. 18 (D.N.H. 1989) (where a settlement agreement releasing an attachment of a vessel in exchange for posting security or bringing the vessel the following day to be reattached was "of a non-maritime nature").

Accordingly, OSR has not proved that its own attachment is supported by a valid admiralty claim based on maritime contract, such that it would be entitled to challenge Zen-Noh's attachment.

### POINT II

### OSR'S MOTION TO VACATE SHOULD BE DENIED BECAUSE ZEN-NOH'S MARITIME ATTACHMENT COMPLIES WITH REQUIREMENTS OF RULE B

Rule B sets forth the process by which a plaintiff may attach the defendant's assets. In order to withstand a motion to vacate a maritime attachment, a plaintiff who has obtained the attachment need only demonstrate that it has complied with the limited requirements set forth in Rule B. *See Aqua Stoli Shipping Ltd. V. Gardner Smith Pty Ltd.*, 460 F.3d 434, 447 (2d Cir. 2006) abrogated on other grounds by *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 61 (2d Cir. 2009) (stating that "Rule B specifies the sum total of what must be

shown for a valid maritime attachment"); *SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, 2007 WL 831810, slip op. at *2 (S.D.N.Y. March 15, 2007) (stating "maritime plaintiffs are not required to prove their case at this stage"); *Chiquita Int'l Ltd. v. M.V. Bosse*, 518 F.Supp.2d 589, 599 (S.D.N.Y.2007), quoting *Aqua Stoli*, 460 F.3d at 445 (stating "a detailed discussion of the merits, however, has little bearing on the motion to vacate, which is decided based on whether a prima facie claim is shown and technical requirements for attachment have been met").

The plaintiff withstands a motion to vacate if he shows the following four elements: 1) he has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. *Aqua Stoli,* 460 F. 3d at 445.

Zen-Noh's attachment complies with each of these requirements.

First, it was granted in support of Zen-Noh's maritime fraud, maritime conversion and interference with maritime contract claims. Complaint ¶¶67-102; *Plaintiff's Motion and Incorporated Memorandum for Issuance of Process of Maritime Attachment and Garnishment* (Dkt. 4) ("**Plaintiff's Attachment Motion**") at 3.

In respect of its claim for maritime fraud, Zen-Noh alleges that during the Vessel's voyage, Sadot knowingly made false representations that they are the "legitimate Bill of Lading holders" and "sole owners" of the Cargo on board the Vessel to Nuval, the apparent charterers of the Vessel and subsequent buyers of the Cargo from Sadot. *See* Complaint ¶¶68-72. Zen-Noh alleges Sadot made those false representations to induce payment for the Cargo from Nuval, and to delay Zen-Noh from taking necessary action to recover the price for the Cargo carried on board the vessel. *Id* at ¶¶73-77.

In respect of its claim for maritime conversion, Zen-Noh alleges that during the Vessel's voyage. Sadot knowingly made false representations that they are the "legitimate Bill of Lading holders" and "sole owners" of the Cargo on board the Vessel to the Shipowners of the vessel,

to induce the Shipowners not to discharge the Cargo anywhere without Sadot's consent, including its port of destination in Lebanon. *Id.* at 81-82, 85-86. By its conduct, Sadot unlawfully and wrongfully exercised dominion, ownership or control over Zen-Noh's property.

In respect of its claim for maritime tortious interference with contract, Zen-Noh alleges that in respect of the above conduct, Sadot intentionally interfered with Zen-Noh's maritime contract with Shipowners for the carriage of the Cargo. *Id* at ¶101.

All of those tort claims are within admiralty jurisdiction. *See*, in respect of maritime fraud, *Exter Shipping Ltd. v. Kilakos*, 310 F. Supp. 2d 1301, 1320 (N.D. Ga. 2004) (admiralty jurisdiction over maritime tort for misrepresentation regarding ownership and disposition of cargo which ultimately controlled the movement of ships and discharge of their cargo); in respect of maritime conversion, *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 40 F.3d 94 (1st Cir. 1993) (stating "in the admiralty context, as elsewhere, conversion is simply an intentional and wrongful exercise of dominion or control over a chattel, which seriously interferes with the owner's rights in the chattel"); and in respect of maritime inducement into contract, *York Marine, Inc. v. M/V Intrepid 2016 WL 5372762,* at *7 (D. Me. Sept. 26, 2016), citing *Carroll v. Prot. Mar. Ins. Co., 512 F.2d* at 8-9 (1st Cir. 1975) and stating the defendant "fraudulently inducing [the plaintiff] to enter a contract with [the defendant] to repair his motor yacht…is 'so interwoven with present and potential maritime contractual relationships' that it falls within admiralty jurisdiction".

Second, the Defendant here cannot be found within the District, as confirmed by the Declaration of Samuel P. Blatchley dated September 23, 2024 (Dkt. 5); Complaint ¶108; and Plaintiff's Attachment Motion at 7.

Third, property in which the Defendant has an interest is however located in this District—the bank account with Citizens Bank in Providence, Rhode Island. Complaint ¶111 and Ex. 10 thereto; Plaintiff's Attachment Motion at 7.

Fourth, no party (including the Intervenor) has identified any statutory or maritime law bar to Zen-Noh's attachment. Therefore, Zen-Noh properly obtained its attachment, and the Court should deny the Motion to Vacate.

## POINT III

### OSR'S MOTION TO VACATE SHOULD BE DENIED BECAUSE OSR CANNOT SHOW THAT ZEN-NOH DOES NOT HAVE VALID PRIMA FACIE MARITIME TORT CLAIMS

OSR's Motion to Vacate should be denied because it does not address Zen-Noh's maritime tort claims, on which the attachment was granted. OSR offers no explanation as to why Zen-Noh's claims fall outside of admiralty jurisdiction or why they fail as a matter of law. Instead, OSR merely asserts that Zen-Noh's claims must be contractual solely because a commodity sales contract exists between Zen-Noh and the Defendant. This bare assertion is insufficient to assist OSR's case.

#### (i)  The Standard for a Prima Facie Admiralty Claim Under Rule B

Vacatur under Rule B is permitted only where the plaintiff's allegations fall short of establishing a valid prima facie admiralty claim. Absent such a showing, the attachment must remain in place. *Sonito Shipping Co., Ltd.* v. *Sun United Maritime Ltd.*, 478 F. Supp. 2d 532, 536 (S.D.N.Y. 2007) (noting that the Supplemental Rules create procedures for attachment, but "[n]either Rule B nor any other of the Supplemental Rules create "a valid prima facie admiralty claim"). The substantive standard to be applied is the prima facie standard.[1] *WAG SPV I, LLC* v. *Fortune Glob. Ship. & Logistics, Ltd.*, No. 19-CV-6207(KPF), 2020 WL 1489814, at *328

---

[1] The prima facie standard has been accepted in the Second Circuit, which has also rejected "the reasoning of the more recent district court decisions which have engaged in a broader Rule E(4)(f) inquiry." *See Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06-CV-1979, 2006 WL 4459297 at *11 (S.D.N.Y.2006) (explaining *Aqua Stoli*). Once property is attached and the defendant moves to vacate under Rule E(4)(f), the attachment stands so long as the plaintiff shows probable cause for the attachment. Courts do not make final factual findings at this stage: they simply decide whether the plaintiff's alleged facts are likely true and provide reasonable grounds for the attachment. *See Austral Asia Pte Ltd. v. SE Shipping Lines Pte Ltd.*, No. 12-CV-1600, 2012 WL 2567149 (E.D. La. July 2, 2012) at 2. "The prima facie standard in the maritime attachment context is a pleading requirement, not an evidentiary standard, and differs from the use of that phrase in other contexts". *Wilhelmsen Premier Marine Fuels AS v. UBS Provedores Pty Ltd.*, S.D.N.Y.2007, 519 F.Supp.2d 399, 409.

(S.D.N.Y. Mar. 27, 2020). The prima facie standard requires "that any challenge must be based on the sufficiency of the complaint." *SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, No. 06-CV-1537(KMK), 2007 WL 831810, at *3 (S.D.N.Y. Mar. 15, 2007).

Supplemental Rule E(2)(a) sets out the minimum pleading standard for a Rule B complaint: "the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Adm. Supp. R. E(2)(a).

Applying this prima facie standard, a party contesting attachment may not invite the Court to adjudicate the merits of the plaintiff's claims. *See SPL Shipping Ltd. v. Gujarat Cheminex Ltd*., No. 06-CV-15375 (KMK), 2007 WL 831810, slip op. at *2 (S.D.N.Y. March 15, 2007) (stating "maritime plaintiffs are not required to prove their case at this stage"); *Chiquita Int'l Ltd*., 518 F.Supp.2d 589 (S.D.N.Y.2007) quoting *Aqua Stoli*, 460 F.3d at 445 (stating "a detailed discussion of the merits…has little bearing on the motion to vacate, which is decided based on whether a prima facie claim is shown and technical requirements for attachment have been met").

Beyond its bare assertion that "Zen-Noh cannot attach Sadot's funds pursuant to Supplemental Rule B because it did not assert a valid maritime claim" (Motion to Vacate at 5), OSR has not articulated any challenge to the sufficiency of Zen-Noh's pleaded claims for maritime fraud, conversion and maritime tortious interference with contract. Accordingly, OSR's Motion to Vacate should be denied.

### (ii) OSR Mischaracterizes the Nature of Zen-Noh's Claims

OSR argues that because there is the Sale Contract in place between Zen-Noh and the Defendant, Zen-Noh's claims against the Defendant "arise from and relate to" and "rest" on the breach of a non-maritime contract (Motion to Vacate at 6). This ignores that Zen-Noh is not

asserting a breach of contract claim. Rather, the Complaint alleges three separate maritime torts which the Defendant committed. Complaint ¶¶67-102; Plaintiff's Attachment Motion at 3.

It has previously been held that a commodity sales contract involving the shipment of goods by sea is not automatically maritime and, therefore, a breach of such a contract may not, by itself, ordinarily support a Rule B attachment, e.g., *EFKO Food Ingredients Ltd. v. Pac. Inter-Link SDN BHD*, 582 F. Supp. 2d 466 (S.D.N.Y. 2008). Even if sales contract (aside from severable independent maritime obligations) might be insufficient to support maritime jurisdiction, Zen-Noh is not seeking Rule B relief on that basis. Its admiralty claims **do not** arise from any breach of any provision of the Sale Contract; they arise from Defendant's tortious conduct. The existence of a contemporaneous sales contract does not convert maritime torts into non-maritime contract claims.

### (iii) OSR's Legal Theory is Unsupported and Incorrect

At its highest, OSR's argument may be reduced to the following proposition: because the Defendant breached the Sale Contract, Zen-Noh can only assert a contractual claim in support of its Rule B attachment. OSR offers no explanation for why maritime tort jurisdiction would not be available, nor why the well-established principles for maritime torts would not apply.

Absent any analysis, OSR appears to suggest that wherever a breach of a commodity sales contract exists, a plaintiff is barred from bringing maritime tort claims, even if the operative facts independently support such torts. This is incorrect. Firstly, the four-factor test articulated in *Aqua Stoli* provides no basis for rewriting Rule B to impose such a restriction. Secondly, the cases cited by OSR do not support its position: none stands for the principle that a maritime tort claim somehow loses its maritime flavor merely because a commodity sales contract exists in the background.

15

In *EFKO Food Ingredients Ltd.*, the plaintiff entered into six contracts with the defendant, whereby the defendant agreed to sell and the plaintiff agreed to buy six separate shipments of red palm olein cargo. Each contract obligated the defendant to arrange for and charter an oceangoing vessel to transport the cargo to its destination, and to load the olein aboard the vessel at a port in Malaysia, for carriage by sea to the plaintiff at a port in Ukraine. The defendant allegedly failed to perform on any of its contracts; and the plaintiff sought a Rule B attachment based on those breaches. The court vacated the attachment because the contract at issue (which the plaintiff alleged the defendant breached) was a sales contract that was non-maritime in nature (stating "what EFKO alleges is that PIL agreed to sell EFKO the palm olein. To hold that this is a maritime claim would substantially and unjustifiably extend the reach of this country's admiralty jurisdiction"). *Id* at 472. *EFKO Food Ingredients Ltd.* is a straightforward application of the principle that a *prima facie* admiralty claim may not be founded on the breach of an ordinary, non-maritime sales contract. It does not involve any claims based on maritime tort.

OSR cites *French Republic v. Fahey*, 278 F. 947, 949 (D. Md.1922). However, this is not a Rule B case. Rather, it concerned whether a claim for breach of contract for the sale of grain fell within admiralty jurisdiction. The seller delayed under the contract and buyer sought to rely on a contractual clause which allowed it to claim damages from the seller. Such claim was based on the demurrage the buyer would incur under a separate charterparty which the buyer had arranged with third parties for the carriage of that grain. The seller argued for the application strike clause in the sales contract. The court found that the contract was non-maritime. The court's decision found that although the contract measured damages by reference to the buyer's demurrage obligations under an independent maritime contract, the seller "never at any time made any agreement with the ship" and therefore there was no admiralty jurisdiction in respect of the obligation under the sales contract. *Id* at *949. This matter does

not concern the measure of damages under a claim for breach of contract, and as a result, *French Republic* is irrelevant.

Furthermore, *French Republic* is a 1922 decision that predates the development of the doctrine of an independent or severable maritime obligation as a basis for admiralty jurisdiction. Under that doctrine, a sales contract that includes a demurrage clause may, in certain circumstances, fall within admiralty jurisdiction if the demurrage provision is deemed an independent maritime obligation within an otherwise non-maritime agreement. *See, e.g., Alphamate Commodity GMBH v. CHS Europe SA*, 627 F.3d 183, 188 (5th Cir. 2010) (demurrage and charges were thoroughly intertwined with non-maritime breach of contract claims such that they "most likely stand or fall with" the broader claims for breach of contract); *Crossbow Cement SA v. Mohamed Ali Saleh Al-Hashedi & Bros.*, No. 08-CV-5074(HB), 2008 WL 5101180, at *5-*7 (S.D.N.Y. Dec. 4, 2008) (severing a demurrage maritime claim from a sale of goods contract because the contract created an independent obligation for demurrage charges); *Centramet Trading S.A. v. Egyptian American Steel Rolling Co.*, No. 07-CV-6379(RMB), 2007 WL 5731922, at *1 (S.D.N.Y. Sept. 28, 2007) (same). Consequently, subject to the particular facts, the outcome of *French Republic* might be entirely different if it were decided today.

Although *Glencore Ag v. Bharat Aluminum Co.*, No. 08-CV-9765(NRB), 2008 WL 5274569 at *3 (S.D.N.Y. Dec. 15, 2008) related to a Rule B motion to vacate, it also concerned a claim for the breach of an obligation under a sales contract and is irrelevant to this case. The issue addressed by the court there was similar to that posed in *French Republic*: whether an independent shipping obligation referenced in a commodity sales contract could be "separately enforced [in admiralty] without prejudice to the rest". *Id.* quoting *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l*, 968 F.2d 196, 199 (2d Cir.1992). The court rejected the seller's argument that a clause which provided the buyer with a right to approve the seller's vessel nomination was a

"severable maritime obligation" that may form the basis of a Rule B attachment. *Glencore Ag*, 2008 WL 5274569 at *4. It is another case that deals squarely with the status of a breach of an obligation contained within a non-maritime contract, and it bears no relevance to this case, framed entirely in tort.

OSR cites two additional cases which it says establish that Zen-Noh's attachment is invalid. Both cases concern breaches of contractual clauses which allocated risk for loss and delay under a sales contract. In *Aston Agro–Industrial AG v. Star Grain Ltd.*, No. 06-CV-2805(GBD), 2006 WL 3755156 (S.D.N.Y. Dec. 20, 2006), the court vacated a Rule B attachment based on a claim for breach of a liquidated damages clause between a buyer and seller under a sales contract. The contract contained a clause labelled "Demurrage" which referred to demurrage rates under a related, but independent charterparty. The court found that the demurrage rate simply set a reference figure for the calculation of damages, but the obligation to pay arose from the sales terms.

In *Indagro S.A. v. Bauche S.A.*, 652 F. Supp. 2d 482 (S.D.N.Y. 2009), the court reaffirmed the basic proposition that a sales contract is not rendered maritime if shipment by sea is involved (stating, "admiralty jurisdiction does not arise simply because a contract refers to a ship, or to the transportation of goods by ship"). *Id.* at 489. It also held that an obligation in the sales contract at issue to reimburse demurrage owed under an independent charter did not create admiralty jurisdiction. Both *Aston-Agro* and *Indagro* deal with the construction of a contractual obligation under a sales contract. Neither are pertinent to Zen-Noh's tort claims.

This leads to OSR's final argument. OSR states that "[b]eing that Zen-Noh's claims rest upon its non-maritime commodity sale contract, and not the charter party governing the transportation of the goods, Zen-Noh has failed to allege a valid *prima facie* admiralty claim" (Motion to Vacate at 6). The suggestion here seems to be that Zen-Noh must frame its claim in terms of breach of charterparty to find maritime contract jurisdiction for its Rule B attachment.

However, there is no requirement at law which states a plaintiff may only utilize Rule B against those with whom it contracted for carriage by sea. A plaintiff can assert maritime tort claims directly against the defendant, without the need to show privity under a maritime contract.

Taken at their highest, OSR's cases stand for the baseline and uncontroversial proposition that an attachment based solely on the breach of a commodity sales contract will be vacated for lack of admiralty jurisdiction. All the cases referred to by OSR allege breach of contract only; none allege any maritime torts or other admiralty claims. Unlike the case law upon which OSR seeks to rely, this case does not concern a contract claim. Rather, it involves three claims for maritime tort. Plainly, these authorities and the principles for which they stand are not dispositive or even persuasive – they are irrelevant.

## <u>CONCLUSION</u>

Accordingly, for all the foregoing reasons, the Court should deny OSR's Motion to Vacate.

Date: December 3, 2025

Respectfully submitted,

Zen-Noh Grain Corporation,

By its attorneys,

ECKLAND & BLANDO LLP

*/s/ Samuel P. Blatchley*
Samuel P. Blatchley (BBO No. 670232)
555 Pleasant Street, Unit 2C
New Bedford, MA 02740
(617) 217-6936
Sblatchley@ecklandblando.com

FLOYD ZADKOVICH (US) LLP

Edward W. Floyd
Luke F. Zadkovich
Filipp A. Vagin
33 East 33rd Street, Suite 905
New York, NY, 10016
ed.floyd@floydzad.com
luke.zadkovich@floydzad.com

19

philip.vagin@floydzad.com
(917) 999 6914
(917) 868 1245
*Attorneys for Plaintiff*
*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2025, a copy of the foregoing was filed through the CM/ECF system, and it is available for viewing and downloading from the CM/ECF system such that all appearing counsel have been served with this document by electronic means.

*/s/ Samuel P. Blatchley*