---------------------------------------------------------

ZEN-NOH GRAIN CORPORATION,

Plaintiff,

v.                                                      Case No. 1:24-cv-00381-MRD-PAS

SADOT LATAM LLC,

Defendant.

---------------------------------------------------------

OSR ROTTERDAM BV,

Intervenor-Plaintiff,

v.                                                      Case No. 1:25-cv-00153-MRD-PAS

SADOT LATAM LLC and
SADOT GROUP INC,

Defendants.

---------------------------------------------------------

## OSR'S REPLY IN SUPPORT OF ITS
## MOTION TO INTERVENE AND VACATE ZEN-NOH'S ATTACHMENT

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, Rule E(4)(f) of the Federal Rules of Civil Procedure, and Local Civil Rule E(8), intervenor-plaintiff OSR ROTTERDAM BV ("OSR"), by and through its undersigned attorneys, respectfully submits *OSR's Reply in Support of its Motion to Intervene and Vacate Zen-Noh's Attachment* [Dkt. 20] and shows as follows:

## INTRODUCTION

The issue before the Court is simple: *Does Zen-Noh have a valid maritime claim?*

The parties agree that a Rule B attachment must be based on a valid maritime claim, and Zen-Noh concedes that "a commodity sales contract involving the shipment of goods by sea is

not automatically maritime and, therefore, a breach of such contract may not, by itself, ordinarily support a Rule B attachment" [Dkt. 23 at p. 15]. In other words, Zen-Noh acknowledges that its soybean contract with Sadot cannot, standing alone, support a Rule B attachment. This concession is dispositive.

Despite this, Zen-Noh attempts to reframe what is fundamentally a commodity contract dispute as an assortment of "maritime" tort claims. This effort should be rejected. The factual allegations in Zen-Noh's complaint [Dkt. 1] only underscore the contractual nature of this dispute—it recites all the material terms of a commodity sales contract like price and quantity, and then claims the exact adjusted purchase price plus contractual interest. Allowing Zen-Noh to disguise its breach of contract claims in maritime torts would effectively allow tort law to drown contract law, and undermine the jurisdictional limits of Rule B. The tort cases Zen-Noh cites primarily involve claims between parties with no direct contractual relationship. They simply do not support the expansion of tort law that Zen-Noh seeks here.

Zen-Noh bears the burden of proving its entitlement to maritime attachment, but its tort allegations are deficient anyway. Even assuming, for the sake of argument, that Zen-Noh's allegations are true, its fraud claim fails. As the holder of the original bills of lading, Zen-Noh knew that Sadot's alleged misrepresentation to Nuval (the charterer) and Brilliant Maritime Ventures (the shipowner) concerning the bills of lading was false. Thus, Zen-Noh cannot claim justifiable reliance or damages stemming from the alleged misrepresentation.

Similarly, Zen-Noh's conversion claim is flawed. Although it asserts ownership of the goods, Zen-Noh never demanded return of the goods, concedes that Sadot did not own, operate, or control the vessel that carried the goods, and still does not know what happened to the goods. Therefore, Zen-Noh cannot allege that Sadot wrongfully withheld or misdelivered the goods.

Given these gaps in its allegations, Zen-Noh has failed to plead essential elements of conversion with sufficient particularity.

The deficiencies in Zen-Noh's tortious interference claim are perhaps the most egregious. Zen-Noh claims that Sadot instructed the vessel to discharge the goods only upon presentation of the original bills of lading. However, this instruction was consistent with the vessel's obligations under the contracts of carriage and applicable law, and it was simply a good faith reminder to the carrier to avoid mis-delivery. Notably, Zen-Noh itself made the same demand in its September 6, 2024, letter to Sadot: "**ZGC hereby demands that [Sadot] immediately … instruct the Vessel not to discharge until original bills of lading are presented**" [Dkt. 1-10 at ¶13(b)] (emphasis in original). Zen-Noh cannot transform lawful conduct that it demanded of Sadot into fraud or tortious interference merely by relabeling it.

Finally, OSR has standing to intervene because its separate attachment of the same funds establishes a secured interest. Denying OSR's intervention here would have no effect on its existing attachment in the other action [25 Civ. 153], potentially starting a race to collect. Courts routinely address competing Rule B attachment claims in such situations. However, the threshold issue for resolving these claims is whether each party has a valid maritime claim and, consequently, a valid Rule B attachment. Zen-Noh has failed to meet this threshold, and its attachment must be vacated.

## ARGUMENT

### I. Zen-Noh's Concession That Its Commodity Contract Cannot Support a Rule B Attachment is Dispositive

The parties agree that a Rule B maritime attachment may issue only "if the plaintiff shows that 1) <u>it has a valid prima facie admiralty claim against the defendant</u>; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district;

and 4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006) (emphasis added), abrogated by *Shipping Corp. of India v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009); *see also Navieros Inter-Americanos, S.A. v. M/V Vasilia Exp.*, 120 F.3d 304, 314–15 (1st Cir. 1997). The threshold requirement that the plaintiff has a valid *prima facie* admiralty claim goes to the core of a court's admiralty and maritime subject matter jurisdiction under 28 U.S.C. 1333(1). If the claim is not maritime, then the court does not have maritime jurisdiction, and the Rule B maritime attachment cannot be issued or, if already issued, must be vacated.

Zen Noh concedes—as it must—that "a commodity sales contract involving the shipment of goods by sea is not automatically maritime and, therefore, a breach of such contract may not, by itself, ordinarily support a Rule B attachment" [Dkt. 23 at p. 15]. In its *Motion to Intervene and Vacate Zen-Noh's Attachment* [Dkt. 20], OSR recited many Rule B cases in support of this rule. *See*, *e.g.*, *EFKO Food Ingredients Ltd. v. Pac. Inter-Link SDN BHD*, 582 F. Supp. 2d 466 (S.D.N.Y. 2008) (after initially granting an *ex parte* application, the court vacated a Rule B attachment based on alleged breach of a contract for the sale of red palm olein, and strongly cautioned against expanding the scope of admiralty jurisdiction to such disputes); *Indagro S.A. v. Bauche S.A.*, 652 F. Supp. 2d 482 (S.D.N.Y. 2009) (a contract for sale and purchase of fertilizer was not maritime in nature merely because the seller agreed to ship the goods by sea, and vacating the attachment); *Glencore Ag v. Bharat Aluminum Co.*, 2008 WL 5274569 (S.D.N.Y. Dec. 15, 2008) (an alumina contract does not provide a basis for maritime jurisdiction, vacating the attachment, and strongly cautioning against expanding the scope of admiralty jurisdiction); *Aston Agro–Industrial AG v. Star Grain Ltd.*, 2006 WL 3755156 (S.D.N.Y. Dec. 20, 2006) (the sale and purchase of Russian wheat to be delivered by vessel and subject to GAFTA arbitration

is not maritime, and vacating the attachment). Zen-Noh's concession is dispositive. The Court does not have maritime jurisdiction, and the Rule B maritime attachment must be vacated.

In an attempt to avoid the overwhelming authority cited by OSR, Zen-Noh argues that these cases are immaterial because they did not involve maritime tort claims [Dkt. 23 at pp. 15-18]. This argument misses the point entirely and should be rejected by the Court. The cases cited by OSR establish a fundamental principle: when the duty to pay for a commodity arises from a non-maritime contract, there is no independent duty that arises from maritime tort law that can support a maritime claim and maritime attachment.

**II.      Zen-Noh's Attempt to Reframe the Commodity Contract Dispute as Maritime Tort Claims Should Be Rejected**

In an attempt to invoke the benefits of Rule B, Zen-Noh improperly characterizes what is fundamentally a commodity contract dispute as a series of maritime tort claims. However, the allegations in its Complaint are clearly grounded in contract with express references to the commodity, quantity, and price—all of which are typical elements of a commodity sale agreement. Specifically:

- The Sale Contract is for the purchase of 27,500 metric tons of Argentine soybean meal for the total purchase price of $12,263,787.48 [Dkt. 1 at ¶ 5];

- The terms of the Sale Contract incorporate GAFTA Contract No. 39—"CONTRACT FOR FEEDINGSTUFFS FROM ARGENTINA"—and the GAFTA Arbitration Rules [Dkt. 1 at ¶ 6];

- The Sale Contract specifies the price as USD 17 per short ton of July 2024 soybean meal futures on the CBOT, converted into US dollars per metric ton [Dkt. 1 at ¶ 7];

- The Sale Contract specifies that title to the goods shall not pass from Zen-Noh to Sadot until full payment is received [Dkt. 1 at ¶ 8];

- In accordance with the Sale Contract, Sadot made advance payments of $1,166,000 towards the purchase price [Dkt. 1 at ¶ 9];

- In accordance with the Sale Contract, on July 18, 2024, the outstanding balance of $11,097,787.48 was payable to Zen-Noh, but Sadot failed to pay [Dkt. 1 at ¶ 25];

- In accordance with the payment schedule, between July 31 and September 6, 2024, Sadot paid some but not all of the outstanding balance [Dkt. 1 at ¶ 39];

- On September 6, 2025, Zen-Noh sent Sadot a letter demanding "**payment of USD$8,181,563.03 plus interest, reflecting the balance of the purchase price and accrued interest under GAFTA Contract No. 39, Clause 11(b)**" [Dkt. 1-10 at 13(a) (emphasis in original)]; and

- On September 12, 2024—*i.e.*, less than one week after its demand letter—Zen-Noh commenced arbitration against Sadot under the Sale Contract [Dkt. 1 at ¶ 45].

The tort claims asserted by Zen-Noh—fraud, conversion, and tortious interference—are based on all the same allegations as a straightforward breach of contract claim rather than any violation of special maritime tort duties. Sadot's obligation to pay is derived solely from the Sale Contract. Tort claims arising from this contractual duty cannot transform the nature of the dispute into maritime torts and thereby create admiralty jurisdiction where no legal duty independent of the contract has been violated.

In determining whether an action is one that rests in contract or in tort, courts look how the tortious conduct was factually alleged and whether it relates to the breach of contract or the breach of independent duties imposed by law. *Absolute Resols. Invs., LLC v. Citibank, N.A.*, 2022 WL 17992199 (S.D.N.Y. Dec. 29, 2022) (applying the independent tort doctrine and finding that a fraud claim was barred because it did not establish a legal duty independent of

obligations that formed the basis of breach of contract claims); *IKEA N. Am. Servs., Inc. v. Ne. Graphics, Inc.*, 66 F. Supp. 2d 547 (S.D.N.Y. 1999) (fraud and negligence claims were not meaningfully distinct from breach of contract claims); *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285 (S.D.N.Y. 1995) (finding the alleged concealment of a breach is insufficient to transform what would normally be a breach of contract action into one for fraud). This inquiry is utilized to prevent tort claims that are obviously duplicative of breach of contract claims and to ensure that tort recovery is not permitted for breaches of contract, a goal similarly expressed by the Supreme Court.

The Supreme Court cautioned against extending maritime tort actions in *East River*, where it stated: "It is clear, however, that if this development were allowed to progress too far, contract law would drown in a sea of tort*." E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866 (1986) (citing See G. Gilmore, The Death of Contract 87–94 (1974)). This principle was reaffirmed in the maritime context in *Laurel Shipping LLC v. Ridgebury Kilo LLC*, 560 F. Supp. 3d 802, 808 (S.D.N.Y. 2021), where the court found that the plaintiff's tort claim relied on breach of contract allegations, but the court did not reach the application of *East River* because the allegations in the complaint were insufficient to support a tort claim anyway.

The cases cited by Zen-Noh to support the expansion of maritime tort claims are all distinguishable and inapplicable because they all involve tort claims between parties lacking any privity of contract, unlike the present contractual dispute between Zen-Noh and Sadot. For example, in *Carroll v. Prot. Mar. Ins. Co.*, 512 F.2d 4, 5 (1st Cir. 1975), crew members sued the insurers of the fishing vessels they worked on, claiming they had been blacklisted for previously making personal injury claims against their employers. Lacking contractual privity with the insurers, the crew members' only recourse was a tort claim. Likewise, in *Evergreen Marine*

*Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90 (1st Cir. 1993), the court resolved a dispute between an ocean carrier that mis-delivered cargo to an insolvent consignee and a bank holding a secured interest in the insolvent consignee's inventory. Notably absent was any contractual relationship between the ocean carrier and the bank that would have governed their dispute and superseded their maritime tort claims. *See also Exter Shipping Ltd. v. Kilakos*, 310 F. Supp. 2d 1301 (N.D. Ga. 2004) (acknowledging that individual defendants were not in direct privity with the shipowner plaintiffs).

In sum, Zen-Noh's attempt to reframe this case as a maritime tort dispute should be rejected. The core complaint is a breach of a non-maritime Sale Contract, and redundant tort claims not founded on an independent duty cannot create maritime jurisdiction where none exists.

## III. The Tort Claims Advanced by Zen Noh are Flawed Anyway

Zen-Noh seeks a maritime attachment based on its tort allegations, but its tort claims fail due to deficiencies in the allegations. As the party seeking to sustain a Rule B attachment, Zen-Noh bears the burden of proving it has a valid maritime claim and a corresponding right to attach. *Trend Intermodal Chassis Leasing LLC v. Zariz Transp. Inc.*, 711 F. Supp. 3d 627 (N.D. Tex. 2024), aff'd, 2024 WL 3423217 (5th Cir. July 16, 2024). Zen-Noh cannot satisfy its burden.

For example, to establish fraud under Rhode Island law, a plaintiff must show: (1) a false or misleading statement of material fact, (2) that the defendant knew the statement was false, (3) that the defendant made the statement with intent to deceive, and (4) that the plaintiff justifiably relied on the statement to its detriment. *Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d 263, 268 (D.R.I. 2000). Additionally, fraud claims in federal court must be pleaded with

particularity under Rule 9(b), which requires that "the circumstances constituting fraud ... shall be stated with particularity." This heightened pleading standard exists to prevent groundless claims asserted solely for tactical purposes. *Dowling v. Narragansett Capital Corp.*, 735 F. Supp. 1105, 1111 (D.R.I. 1990).

Zen-Noh's fraud claim fails because it cannot show justifiable reliance on the alleged misrepresentation. As the alleged holder of the original bills of lading [Dkt. 1 at ¶¶ 18, 23, 30, and 65], Zen-Noh knew the statements made by Sadot regarding the bills were false and therefore could not have reasonably relied on them. Furthermore, Zen-Noh fails to detail how the alleged misrepresentations caused it any harm.[1] The only damages alleged are the unpaid portions of the purchase price of the goods, a fact that undermines the notion that the fraud claim is separate and distinct from a breach of contract claim. *Mia Shoes, Inc. v. Republic Factors Corp.*, 1997 WL 525401 (S.D.N.Y. 1997) (relying on the fact claimant did not allege any damages for fraud that are distinct from its breach of contract action in finding claimant attempted to transform an action for breach of contract into an action for fraud). Therefore, Zen-Noh's fraud-based claim and request for maritime attachment should be rejected as it fails the heightened pleading standard.

Zen-Noh's conversion claim is flawed and should be dismissed because it fails to meet the necessary legal elements under First Circuit law. To prevail on a claim for conversion, a plaintiff must show that: (1) the defendant intentionally and wrongfully exercised control or dominion over the plaintiff's personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the

---

[1] Zen-Noh does not have standing to claim damages for alleged fraud upon Nuval [Dkt. 1 at ¶ 73].

defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused. *Spottiswoode v. Son*, 593 F. Supp. 2d 347 (D. Mass. 2009) (quoting *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90 (1st Cir. 1993)).

Zen-Noh fails to allege all of these essential elements. Despite asserting ownership of the goods, Zen-Noh has not alleged with particularity that Sadot ever exercised wrongful control over the goods. For example, Zen-Noh acknowledged that Sadot neither owned, operated, nor controlled the vessel that was carrying the goods [Dkt. 1 at ¶¶ 14-15]. In addition, Zen-Noh's claim lacks specificity regarding how the goods were damaged by Sadot's implied (but not specifically alleged) conduct. Zen-Noh does not know the current whereabouts of the goods or whether its interests in the goods have been irreparably harmed [Dkt. 1 at ¶¶ 63-64]. Even more crucially, Zen-Noh has not alleged that it demanded the return of the goods, despite holding the original bills of lading, which would have provided it the right to do so. This failure to make a demand for the goods further undermines Zen-Noh's conversion claim. Zen-Noh's failure to allege the essential elements of conversion under First Circuit law warrants dismissal.

Zen-Noh's tortious interference claim is fundamentally flawed and should be dismissed as well. To establish a claim for tortious interference with a contract under First Circuit law, a plaintiff must show: (1) the existence of a contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) that the defendant intentionally and without justification interfered with the contract in an illegal or malicious manner; and (4) that the plaintiff was damaged by the defendant's conduct. *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 806 F. Supp. 291, 296 (D. Mass 1992), vacated by *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90 (1st Cir. 1993).

Zen-Noh's allegations fail to plead these elements. It claims that Sadot interfered with its contract by instructing the vessel not to discharge the goods until the original bills of lading were presented [Dkt. 1 at ¶¶ 26, and 27]. However, this instruction was entirely reasonable and consistent with the vessel's obligations under the contracts of carriage and applicable law. Zen-Noh itself took the same position in its September 6, 2024, letter, demanding that Sadot instruct the vessel to withhold discharge until the original bills of lading were presented. As Zen-Noh's own conduct mirrors the alleged interference, it cannot credibly argue that Sadot's actions were unlawful, malicious, or caused harm. Given the lack of any illegal or malicious interference with the contract of carriage, Zen-Noh's claim should be dismissed.

## IV. OSR Has Standing to Intervene Based on Its Secured Interest in the Attached Funds

OSR has a secured interest in the property that it already attached and, therefore, it has standing to intervene in this action under Rule 24 and vacate Zen-Noh's attachment pursuant to Supplemental Rule E.

The cases cited by Zen-Noh in its argument that OSR lacks a significantly protectable interest to intervene as of right under Rule 24(a)(2) [Dkt. 23 at pp. 2-4] and that there are no common questions of law and fact supporting OSR's intervention under Rule 24(a)(b) [Dkt. 23 at pp. 4-5] are inapplicable because they are not maritime cases that involved property that was already attached.[2] On the other hand, in one maritime case discussing Rule 24 intervention, *New*

---

[2] In *Hawaii-Pac. Venture Cap. Corp. v. Rothbard*, 564 F.2d 1343 (9th Cir. 1977), the court denied intervention in a class action for securities fraud, finding that stockholders did not have an attached property interest and could not intervene based on a potential future claim. In *United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004), the court denied a creditor's motion to intervene in an environmental enforcement action, reasoning that the creditor's interest in collecting a judgment was not sufficiently related to the public health focus of the litigation. In *Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197 (1st Cir. 1998), the court denied intervention by ratepayers and advocates in a lawsuit against the New Hampshire PUC, holding

*Hampshire Ins. Co. v. Greaves*, 110 F.R.D. 549 (D.R.I. 1986), wrongful death claimants moved to intervene in a federal declaratory judgment action brought by the insurer of a ship involved in a collision. The action sought a determination that the insurer's policy had been properly rescinded. The court held that the wrongful death claimants had a legal interest in intervening under Rule 24(a)(2) because the insurer's success in the action would likely leave the claimants without an adequate remedy. The court reasoned that if the insurer prevailed, the claimants' only recourse would be against the uninsured defendant who lacked sufficient assets to satisfy any substantial judgment. While the possibility of difficulty in collecting a judgment alone was insufficient to justify intervention, the court found that in this case the judgment could become impossible to collect, thereby supporting the claimants' right to intervene.

Rule B maritime attachment is an extraordinary procedure that restrains the ability of *in personam* defendants to move their ships and funds outside of US jurisdiction to evade the enforcement of substantive rights under admiralty law. *Aurora Mar. Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44 (2d Cir. 1996). One of the primary purposes of Rule B attachment is "to give the attaching plaintiff security to satisfy any judgment he might obtain" [Dkt. 23 at p. 6]. In *Aurora Mar. Co. v. Abdullah Mohamed Fahem & Co.*, 890 F. Supp. 322, 328 (S.D.N.Y. 1995), aff'd, 85 F.3d 44 (2d Cir. 1996), Judge Sotomayor explained that "[o]nce plaintiffs attached the Account under Rule B, a limited property right was created under federal law."[3] This special Rule B property right is available only to maritime claimants, such as OSR.

---

that their interests were too generalized and adequately represented, distinguishing the case from situations involving attached property.

[3] Notably, *Aurora* considered competing claims between a Rule B attaching plaintiff and the garnishee bank, which had been served with the attachment order and contested priority to the attached funds.

OSR's standing to intervene is further supported by *Evridiki Navigation, Inc. v. The Sanko Steamship Co.*, 880 F. Supp. 2d 666 (D. Mass. 2012), which Zen-Noh cites. In *Evridiki*, plaintiff Liquimar filed a Rule B complaint seeking attachment of the vessel MINERAL. Shortly thereafter, Knightsbridge filed an intervening complaint and request for attachment, which was granted. Several other intervening plaintiffs followed, seeking attachments and arrests of the same vessel. Contrary to Zen-Noh's argument, the court did not hold that only Rule C maritime lien claimants—rather than those seeking Rule B maritime attachments—could intervene. Instead, the court allowed multiple Rule B parties to intervene. Therefore, *Evridiki* directly supports OSR's right to intervene here.

Additionally, OSR's motion to vacate under Supplemental Rule E raises a fundamental issue of subject matter jurisdiction, which this Court must address. Federal courts have limited jurisdiction and can only hear cases authorized by law, such as admiralty and maritime disputes under 28 U.S.C. § 1333. As the court held in *Trend Intermodal Chassis Leasing LLC v. Zariz Transp. Inc.*, 711 F. Supp. 3d 627 (N.D. Tex. 2024), aff'd, 2024 WL 3423217 (5th Cir. July 16, 2024), a defect in subject matter jurisdiction can be raised at any time, and the court has an obligation to consider it *sua sponte*. In *Trend Intermodal*, the court vacated a Rule B attachment because the underlying agreement was not a maritime contract, and, as a result, the court lacked admiralty jurisdiction. Similarly, in this case, the lack of a valid maritime claim by Zen-Noh raises a jurisdictional defect that requires the attachment to be vacated.

Even if OSR's motion to intervene and vacate Zen-Noh's attachment is denied, on the basis that OSR does not have a protectable interest, then OSR has already independently attached Sadot's funds in a separate action [25 Civ. 153], and OSR could ultimately prevail in the race to judgment, allowing it to be the first to access those funds. Under Zen-Noh's own argument, it

-13-

would be unable to stop OSR from collecting.  Alternatively, under OSR's argument, the Court would be able to consider priority between OSR and Zen-Noh, and dismiss Zen-Noh's attachment due to the absence of a valid maritime claim for reasons discussed *supra*.

WHEREFORE, intervenor OSR Rotterdam BV respectfully requests that this Honorable Court grant its Motion to Intervene and Vacate Zen-Noh's attachment.

Plaintiff, OSR ROTTERDAM BV
By its Attorneys:

*/s/ Kirby L. Aarsheim*
Kirby L. Aarsheim (Bar No.: 8368)
Farrell Smith O'Connell
Aarsheim Aprans LLP
106 Francis Street, Suite B2
Providence, Rhode Island 02903
508-989-1821 (Tel)
kaarsheim@fsofirm.com

and

Robert E. O'Connor (*pro hac vice*)
Cassandra Hemmer (*of counsel*)
MONTGOMERY MCCRACKEN
WALKER & RHOADS LLP
437 Madison Avenue
New York, NY 10022
Tel.:       (212) 867-9500
Email:    roconnor@mmwr.com
            chemmer@mmwr.com

## CERTIFICATE OF SERVICE

I certify that on December 10, 2025, I filed the above document via the Electronic Case Filing System, through which a copy will be electronically delivered to all attorneys who are listed as registered participants in connection with this case.

*"/s/ Kirby L. Aarsheim"*
Kirby L. Aarsheim
